**NEW STYLE HOMES, INC.,**
Plaintiff–Respondent,

v.

**Jack FLETCHER, d/b/a Green Valley Mobile Home Sales, Defendant,**

and

**Atlas Surety Corporation,**
Defendant–Appellant.

**No. WD 32031.**

Missouri Court of Appeals,
Western District.

Oct. 1, 1980.

Wiley W. Morrison, Morrison, Baker, Neds & Odneal, Raytown, for defendant–appellant.

Dowell, McNearney, Desselle & Calton, Gregory P. Barabas, Independence, for plaintiff–respondent.

Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.

DIXON, Judge.

Defendant Atlas Surety Corporation appeals from a money judgment entered in a court–tried case. The basic and dispositive issue is the contradiction between the pleading, the proof, and the judgment entered. The proof does not follow the pleading; and the findings of fact, conclusions of law, and the judgment do not follow either the proof or the pleadings.

Review has been hampered by a sketchy and inconclusive record as well as by a failure on the part of the parties to focus on the contradictions observable on the face of the record.

To demonstrate the fundamental error that exists in this record, the statement of facts will be articulated under three major headings.

### The Pleadings

There is a recital in the transcript that reflects a petition and an answer, a counterclaim and an answer to the counterclaim. It is then recited that plaintiff filed a motion to add parties. Presumably, this was sustained since the first pleading set forth is an amended petition in two counts against three parties.

Omitting formal allegations, Count I asserts a cause of action against Jack Fletcher by plaintiff, New Style Homes. This cause of action alleges that the defendant is indebted to plaintiff in the amount of $10,489.00 "for goods and merchandise sold and delivered to defendant at defendant's own special instance and request." It is further recited that demands for payment "have been ignored by defendant."

The second count of the amended petition asserts plaintiff New Style's claim against Atlas Surety Company and The Westport Avenue Bank. Again omitting formal allegations as to corporate status and addresses, the second count asserts that:

1. Jack Fletcher contracted to purchase, and plaintiff agreed to sell an identified mobile home.

2. Jack Fletcher made arrangements with Atlas and Westport Bank "for financing of said mobile home."

3. Upon representations of *Jack Fletcher* that Atlas and Westport were providing financing, plaintiff "transferred said mobile home pursuant to a manufacturer's statement of origin to a motor vehicle" to *Jack Fletcher.*

4. The certificate was sent to Atlas to facilitate financing and payment to plaintiff.

5. "[T]here existed among manufacturers of mobile homes and financing institutions a long established custom or usage whereby the manufacturer is paid directly out of the financing for such items as the said mobile home; and such custom or usage was known by both plaintiff and defendants."

6. That "ATLAS SURETY COMPANY and THE WESTPORT AVENUE BANK, despite their fiduciary duty to plaintiff and the custom and usage as described aforesaid, negligently paid over said proceeds . . . directly to defendant, JACK FLETCHER."

7. Plaintiff has received no funds and has suffered damage in the amount of $10,489.00.

To this amended petition, Westport Bank filed a motion to dismiss which was sustained. Atlas filed an answer which, aside from admissions of corporate status, either denied the allegations made or denied information sufficient to form a belief.

### The Evidence

Plaintiff offered as one of its two witnesses its president who identified an invoice on a mobile home sold to Jack Fletch-

er for which no payment had been received. This witness further testified that the manufacturer's certificate of origin on the unit was sent to Atlas pursuant to directions from a person later identified as an officer of Atlas. The witness had a conversation after the certificate of origin and invoice were sent to Atlas in which Atlas said that New Style would be paid. The witness testified that it was the custom and practice in the industry to send the invoice and certificate to a "financial institution" and that the "financial institution" paid the manufacturer. The testimony on cross-examination was to the effect that, after no funds were received, the plaintiff contacted Atlas and Fletcher, and that Fletcher wrote a check to plaintiff for $10,489 on which payment was later stopped. The witness had no knowledge of how the deal was closed and whether the money was ever paid to Fletcher by "a bank," although without objection he testified he was "told" a bank had paid Fletcher.

The plaintiff also offered a witness who had been employed by Atlas and who was presently a banker. He had no personal knowledge of the facts, but testified that the custom and usage was for service companies such as Atlas to provide a conduit between the manufacturer and the lending institution *directing or instructing* the lending institution as to the payments to be made. He did not testify to any practice of payment by service companies.

After plaintiff closed the evidence on its case in chief, the defendant Atlas offered evidence tending to establish a contrary custom as to the function of "service companies" that were not lending agencies. It was also shown in the Atlas proof that the manufacturer's certificate of origin was received. A transaction between Fletcher, Westport Bank, and an identified third person as purchaser with respect to the mobile home was described as "processed" by Atlas. Atlas' witnesses unequivocally asserted that the Westport Bank was instructed *in writing* to pay New Style for the invoice on the trailer in question, the balance of any payments to go to Fletcher. The evidence in total does not reflect in any way

how or to whom the Westport Bank disbursed the funds or even that any funds were ever disbursed, except by the assumption of the parties that the funds were disbursed.

*Findings, Conclusions, and Judgment*

FINDINGS OF FACT OF TRIAL COURT:

1. Plaintiff sold Jack Fletcher a mobile home, demand for payment was refused, and Fletcher owes plaintiff $10,489.00.

2. Plaintiff sent a certificate of origin to defendant Atlas; defendant acknowledged receipt; and defendant negligently breached their duty to protect the manufacturer's interest (pursuant to a longstanding custom and business practice) and plaintiff sustained harm proximately caused by defendant's negligence in the amount of $10,489.00.

CONCLUSIONS OF LAW:

1. Jack Fletcher defaulted.

2. Defendant had knowledge of the custom in the industry. Defendant failed to adhere thereto, it being insufficient compliance with the custom to deliver the certificate to the bank with instructions on payment. Such failure constituted negligence, causing plaintiff harm in the amount of $10,489.00.

3. Interest is assessed on all judgment amounts at 6%; defendants Fletcher and Atlas are jointly and severally liable.

■ Atlas has asserted in its brief that there is no evidence that supports the court's finding that New Style sustained any damage as a result of Atlas' negligence, even if it be assumed that negligence was shown. That contention must be sustained. Any finding that Westport Bank improperly paid Fletcher or that Fletcher is not capable of paying New Style rests solely on speculation and conjecture. The pleading by New Style was that Atlas and Westport Bank negligently paid the funds directly to Fletcher. Even assuming that the petition is good, there is absolutely no proof to support this allegation. The pleadings do not state and the proof does not show that

Fletcher has become insolvent or absconded or otherwise become so disabled from performing the primary obligation of payment to support the New Style claim that payment to him has damaged them.

"In the ordinary action for damages, the plaintiff has the burden of proving a submissible case by adducing substantial evidence of probative value or by inferences reasonably drawn therefrom. The concept of a "submissible case" contemplates the establishment of *each element* of a cause of action by such evidence or inference, and a *total failure of proof* as to any one element of the cause of action constitutes a missing link breaking the chain of facts, the completion of which is necessary to an assessment of liability." *Estate of Zeppenfeld*, 593 S.W.2d 890 (Mo.App.1979).

█ The duty to make its case is upon New Style, and it must remove it from the field of conjecture and establish it by substantial evidence of probative value, or by inferences reasonably to be drawn from the evidence. *Farnham v. Boone*, 431 S.W.2d 154 (Mo.1968).

The ability or inability of New Style to recover the $10,489 from Fletcher rests only on conjecture in the absence of any substantial evidence on the issue. Having failed in its burden of proof, New Style's judgment against Atlas must be vacated.

Two other matters need mention. The trial court judgment was made joint and several against Atlas and Fletcher, and it further assessed interest on the joint and several judgment.

It comes as no surprise that neither Atlas nor New Style cite any authority in support of or against the joint judgment, although they do state that the contract and tort claims were properly joined in the same case.

█ It is true that tort claims and contract claims against different defendants based on common questions of law or fact

may be joined in one action, *State ex rel. Farmers Ins. Co., Inc. v. Murphy*, 518 S.W.2d 655 (Mo. banc 1975), and that judgment may be given against one or more defendants according to their respective liabilities. *Metropolitan St. Louis Sewer District v. Zykan*, 495 S.W.2d 643 (Mo.1973); Rule 52.05(a). However, joint liability in such cases does not necessarily follow.

█ First, the liability to support a joint judgment must as a fundamental premise be joint which cannot be true where one action is ex contractu and the other ex delicto on different facts.[1] Second, the joint liability of the parties must be properly pleaded to support the joint judgment. *Allstate Insurance Co. v. Northwestern National Insurance Co.*, 581 S.W.2d 596 (Mo.App.1979). Based on the scant testimony here, it does not appear that Atlas was even involved in the contract between New Style and Fletcher, and even assuming that it was, the contract is not pled against Atlas.

█ Finally, in the interests of advising the parties and the trial court of the appropriate procedure to be followed on a retrial of the issues, some mention should be made of the trial court's addition of interest to the tort recovery under Count II. The Missouri rule is that interest will only be allowed in tort actions when a pecuniary benefit could accrue to the defendant. *Protection Mutual Insurance Co. v. Kansas City*, 551 S.W.2d 909 (Mo.App.1977). A discussion of the necessity for a demand and proof on the issue of interest may be found in *FDIC v. Farmers Bank of Newtown*, 238 Mo.App. 350, 180 S.W.2d 532 (1944); *Kinsolving v. Kinsolving*, Mo.App., 194 S.W. 530 (1917). The parties, by reference to this authority, may be advised as to the appropriateness of any claim for interest in a subsequent trial.

The failure of the proof in this case does not require outright reversal since it appears that there may be proof available but

---

1. This opinion does not reach or decide issues of tort liability arising from tortious acts in breach of a contract.

not offered on the issues. *Searcy v. Neal*, 509 S.W.2d 755 (Mo.App.1974).

The judgment of the trial court in favor of New Style and against Fletcher is final; the judgment against Atlas is reversed and the cause is remanded to the trial court for a retrial of the issues presented by Count II of the amended petition, or as that pleading may be subsequently amended in the trial court.